IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

|  |  |  |
|---|---|---|
| Rickie H. Harrison, | ) | |
| Plaintiff, | ) | Civil Action No.  6:05-0590-RBH-WMC |
| | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Jo Anne B. Barnhart, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB") or supplemental security income benefits ("SSI").

## ADMINISTRATIVE PROCEEDINGS

On August 30, 2001, the plaintiff filed applications for DIB and SSI alleging disability beginning July 1, 2000.  The applications were denied initially and on reconsideration.  On June 3, 2002, the plaintiff requested a hearing, which was held on

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

October 23, 2002.  Following the hearing, at which the plaintiff, his attorney, a witness and a vocational expert appeared, the administrative law judge considered the case *de novo*, and on February 28, 2003, determined that the plaintiff was not entitled to benefits.  This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on January 28, 2005.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1)    The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

> (2)    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

> (3)    The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

> (4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

> (5)    The undersigned finds the claimant's allegations regarding his limitations are not fully credible for the reasons set forth in the body of the decision.

> (6)    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

> (7)    The claimant has the residual functional capacity to perform light work.

> (8)    The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

> (9)    The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

> (10)    The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

2

(11)    Transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

(12)    The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

(13)    Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as an assembly worker and machine tenderer.

(14)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.


## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of

3

Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was 40 years old on the date he claims he became disabled (Tr. 55, 240). He has a eighth-grade education and has worked as a painter/sand blaster, automobile detailer, mover, and janitor (Tr. 81, 243).

In July 1978, the plaintiff sustained a subtrochanteric fracture of the left hip in a bicycle accident (Tr. 118). He underwent surgical treatment (open reduction and internal fixation with Jewett nail) at Charleston County Hospital and was discharged on August 1, 1978 (Tr. 118).

More than 13 years later, on December 13, 2001, Dr. Theodolph H. Jacobs examined the plaintiff at the request of the Commissioner. The plaintiff reported a one-year history of increasing hip pain related to the surgical repair of his left-hip fracture and a history of surgery to repair a left wrist fracture. He complained of difficulty with standing or walking more than 20 minutes and driving more than 30 minutes, and of weakness in the left leg that caused his foot to drag. He related that he had been using a cane to ambulate for some time and that he took over-the-counter pain medication as needed. Dr. Jacobs observed that the plaintiff walked with an antalgic gait and used a cane. His examination

of the plaintiff's upper extremities was "completely within normal limits" except for a healed surgical scar across the left wrist. He found the plaintiff had symmetrical reflexes; a normal psychiatric examination; mildly decreased muscle tone and a surgical scar in the left thigh; tenderness in the great trochanteric area and upper buttocks without redness, swelling, or heat; and reduced range of motion of the left hip. Dr. Jacobs stated that the plaintiff was able to balance on his left leg and could perform a deep-knee bend about halfway down with some decreased strength of the left quadriceps. Dr. Jacobs concluded that the plaintiff was experiencing left hip pain, probably secondary to traumatic arthritis, and status-post left wrist fracture repair without complaints of significant discomfort (Tr. 130-32).

An x-ray of the plaintiff's left hip taken on December 13, 2001, produced findings compatible with previous internal fixation of a left-femoral fracture. An x-ray of the plaintiff's left wrist showed an orthopedic nail traversing the radial styloid process (Tr. 135).

On December 13, 2001, Dr. William P. Clare, Jr., saw the plaintiff as a new patient. The plaintiff complained of left hip pain unrelieved by over-the-counter medication. Dr. Clare's examination revealed symmetrical reflexes, intact sensory and motor functioning, and no edema. He recommended an orthopedic evaluation[2] and Vocational Rehabilitation Services and prescribed Naprosyn[3] and Ultram[4] (Tr. 133-34, 154).

On December 30, 2001, Dr. George T. Keller, III, a State Agency physician, assessed the plaintiff's physical residual functional capacity at the request of the Commissioner, based on a review of the plaintiff's records. Dr. Keller reported that the plaintiff could perform light work subject to postural limitations. He also indicated that the

---

[2] It appears from the record that the plaintiff was subsequently evaluated by Dr. Lowery, apparently an orthopedist, but no report of that evaluation was submitted (Tr. 151).

[3] A non-steroidal anti-inflammatory indicated for treatment of rheumatoid arthritis, osteoarthritis, ankylosing spondylitis, and juvenile arthritis. *Physicians' Desk Reference*. 54th ed.

[4] A centrally acting analgesic indicated for the management of moderate to moderately severe pain. *Physicians' Desk Reference*. 54th ed.

severity of the plaintiff's symptoms was disproportionate to that which would be expected from his impairment (Tr. 141-48). Dr. William Cain, another State Agency physician, concurred in Dr. Keller's assessment on April 18, 2002 (Tr. 148).

On January 28, 2002, the plaintiff advised Dr. Clare that he was "doing fairly well" but complained of intermittent left foot drop, particularly with long distance walking, and requested a prescription for a cane. Dr. Clare prescribed a cane and an ankle brace (Tr. 149, 151).

On March 14, 2002, the plaintiff complained to Dr. Clare of continued left hip pain. Dr. Clare noted that the plaintiff had no other complaints or medical problems and increased his dosage of Ultram (Tr. 150).

On June 11, 2002, Dr. Clare reported that the plaintiff could sit or stand for only 15 minutes and walk for only 10 minutes at one time; could occasionally lift less than nine pounds and never lift 10 or more pounds; could grasp, handle, and manipulate with both hands but could not push or pull with either; could not operate foot controls; could occasionally use his hands above shoulder level but could never squat, kneel, crawl, or stoop; and should avoid unprotected heights. Dr. Clare stated that surgical repair of the plaintiff's left hip fracture had left him with "chronic, debilitating pain and significant loss of mobility," and that his pain was likely to affect his concentration. Dr. Clare also stated that the plaintiff could walk short distances with a cane, had left foot drop, and took large doses of non-narcotic pain medication (Ultram) which could cause dizziness and sleepiness (Tr. 163-65).

In a letter to the plaintiff's attorney dated October 9, 2002, Jean Hutchinson, M.Ed., stated that she administered an Adult Basic Education test to the plaintiff, and that the plaintiff was unable to read the directions and simple words and was "considered to be illiterate" (Tr. 167).

At the hearing on October 23, 2002, the plaintiff testified that he spelled poorly and could read only some words in his daughter's kindergarten books (Tr. 244). He testified that he did not have a driver's license because he could not pass the written test (Tr. 254). He testified that he had worked most of his life as a painter and sand blaster (Tr. 246-47). He testified that he stopped working because walking around while pulling hoses and standing in one place too long were painful for him and caused his wrists to swell (Tr. 247-48). He testified that pain in his leg and hip was his most serious problem, and that he had been using a cane for about five years (Tr. 248-51). He testified that he had difficulty holding and picking up things with his left hand because he had pins in his left wrist (Tr. 249-50). He testified that he could stand for 15 to 20 minutes, sit for 15 to 30 minutes, and lift a maximum of 15 pounds with his right hand (Tr. 252). He testified that Ultram reduced his pain but made him feel drowsy and that he usually slept for four to five hours between 9:00 a.m. and 5:00 p.m. (Tr. 253, 259). He testified that he spent much of the day sitting with his leg elevated, and that he wore a brace on his lower leg due to foot drop (Tr. 257).

Latonya Drayton, the plaintiff's fiancée, testified that the plaintiff usually spent most of the day sleeping, often kept his leg elevated, and was in excruciating pain when he was still working (Tr. 269-70).

Robert E. Brabham, Ph.D., a vocational expert, testified that the plaintiff's past work as an automobile detailer was unskilled medium work. He testified that the plaintiff's past work as a painter and sand blaster was semi-skilled "medium work"[5] as generally performed and semi-skilled "heavy work"[6] as the plaintiff performed it. The ALJ asked Dr. Brabham to consider a person of the plaintiff's age with a marginal education who was

---

[5]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary or light work."  20 CFR §§ 404.1567(c), 416.967(c) (2005).

[6]"Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 CFR §§ 404.1567(d), 416.967(d) (2005).

8

limited to unskilled light work which required no reading, writing, or math; who could lift 20 pounds occasionally and 10 pounds frequently; who could not crawl, crouch, squat, kneel, or climb; who could not operate foot or leg controls; who needed to alternate between sitting and standing; and who could not lift more than five pounds with the nondominant left hand. Dr. Brabham testified that such a person could work as an assembler or machine tender/operator (Tr. 272-75).

## ANALYSIS

The plaintiff alleges disability commencing July 1, 2001 (Tr. 240-41) due to a broken left hip and leg. The ALJ found that the plaintiff could perform light work and, based upon the testimony of the vocational expert, he determined that there are a significant number of jobs in the national economy that he could perform. He cited the jobs of assembly worker and machine tenderer (Tr. 20). The plaintiff alleges that the ALJ erred by (1) failing to give adequate weight to the opinion and assessment of his treating physician, Dr. Clare; and (2) failing to properly consider his subjective complaints.

### Treating Physician

The plaintiff first argues that the ALJ did not properly evaluate the opinion of his treating physician, Dr. Clare (pl. brief 7-9). The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p, 1996 WL 374188, *5. Furthermore, even if the plaintiff can produce conflicting evidence which might have

9

resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5.

This court agrees that the ALJ erred failing to properly evaluate the opinion of Dr. Clare. On June 11, 2002, Dr. Clare, who had treated the plaintiff for approximately six months, reported that the plaintiff could sit or stand for only 15 minutes and walk for only 10 minutes at one time; could occasionally lift less than nine pounds and never lift 10 or more pounds; could grasp, handle, and manipulate with both hands but could not push or pull with either; could not operate foot controls; could occasionally use his hands above shoulder level but could never squat, kneel, crawl, or stoop; and should avoid unprotected heights. Dr. Clare stated that surgical repair of the plaintiff's left hip fracture had left him with "chronic, debilitating pain and significant loss of mobility," and that his pain was likely to affect his concentration. Dr. Clare also stated that the plaintiff could walk short distances with a cane, had left foot drop, and took large doses of non-narcotic pain medication (Ultram) which could cause dizziness and sleepiness (Tr. 163-65).

In his opinion, the ALJ stated the following:

Although the undersigned does not find the claimant credible,
the undersigned has given the claimant the benefit of the doubt

10

in assessing a residual functional capacity. Consideration has also been given the reports of the state agency medical consultants as well as to other treating, examining and non-examining medical sources. The undersigned finds that most of the opinions are consistent with the record as a whole and are thereby accepted. However the undersigned finds that the medical opinion of Dr. Clare is totally inconsistent with the medical evidence and thereby not assigned any weight.

(Tr. 19). Without a citation to the evidence upon which he is relying, it is impossible for the court to determine that the ALJ's decision is based upon substantial evidence. Nowhere in the decision is there cited a treating or examining source disputing Dr. Clare's assessment of functional capacity. Further, the non-examining state agency physicians did not have the benefit of Dr. Clare's detailed questionnaire responses (Tr. 141-48). As noted by the plaintiff, the non-examining state agency consultants do not provide an explanation for the conclusion that the plaintiff's symptoms are disproportionate to the evidence. Based upon the foregoing, a remand is necessary for a proper evaluation of the treating physician's opinion.

### Subjective Complaints

The plaintiff next argues that the ALJ failed to properly evaluate his subjective complaints of pain (pl. brief 5-7). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7 states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to any subsequent reviewers the

11

weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p.

The ALJ found as follows: "[T]he undersigned finds the claimant's allegations regarding his limitations are not fully credible for the reasons set forth in the body of the decision" (Tr. 21). In the body of the decision, the ALJ stated:

> The claimant's medical evidence reveals that he has a 20-year-old injury and is considered status post hip repair for fracture with current left hip pain probably secondary to traumatic arthritis. Notwithstanding, the only medications that the claimant was taking for his pain were over-the-counter medications. The claimant's recent pelvic examination was unremarkable. However his left wrist exam showed some irregularity consistent with an old trauma. The claimant does have some restrictions however from the injury that has reduced his residual functional capacity. He is unable to use his lower extremities for pushing and pulling and is unable to lift more than 5 pounds with the left hand alone. Although the undersigned does not find the claimant credible, the undersigned has given the claimant the benefit of the doubt in assessing a residual functional capacity.

(Tr. 18-19).

As noted by the plaintiff, the ALJ made no findings as to whether the plaintiff's impairments are reasonably expected to produce the symptoms and limitations he alleges. Further, the evidence cited by the ALJ to contradict the plaintiff's testimony is not "substantial." Although the ALJ stated that the plaintiff's recent pelvic examination was unremarkable, he failed to note that the examination showed an old injury and surgery and the examining doctor diagnosed left hip pain probably secondary to traumatic arthritis (Tr. 132). The ALJ also drew a negative inference in stating that the only medications that the plaintiff was taking for his pain were over-the-counter medications. However, it is clear from the record that the plaintiff was prescribed and took Ultram for pain. Dr. Clare stated in his opinion that the plaintiff took "large doses" of Ultram for pain and that the medication caused dizziness and sleepiness (Tr. 166). Dr. Clare's opinion supports the plaintiff's

12

testimony that Ultram reduced his pain but made him feel drowsy and that he usually slept for four to five hours between 9:00 a.m. and 5:00 p.m. (Tr. 253, 259). Clearly, the ALJ erred in failing to properly evaluate the plaintiff's subjective complaints, and therefore remand is necessary.

Lastly, the plaintiff notes other flaws in the ALJ's decision, which this court finds should be addressed upon remand:

> (1)    The ALJ rejected impairment listings without stating which listings were considered and why there were not met or equaled.

> (2)    The ALJ failed to consider all the material evidence, including the plaintiff's use of a cane and foot brace for ambulation, his use of prescription medications, his left wrist impairment, and each item of Dr. Clare's functional assessment.

> (3)    The plaintiff's illiteracy was not addressed to the vocational expert.

> (4)    The vocational expert testified to numbers of jobs with a sit/stand option without explaining from where those numbers came.

## CONCLUSION AND RECOMMENDATION

While the plaintiff argues that the case should be remanded solely for the purpose of award, this court cannot say that an award is appropriate based upon the record before it. Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe
United States Magistrate Judge

December 19, 2005
Greenville, South Carolina

13